**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

VICTOR ARIZA,

   Plaintiff,

v.

RUMI ONLINE INC.,

   Defendant.

_____/

Case No.: 6:23-cv-01701-RBD-RMN

### <u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>
### <u>AND INCORPORATED MEMORANDUM OF LAW</u>

Defendant, Rumi Online, Inc., a New York corporation, ("Defendant"), by and through the undersigned counsel, and pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, hereby files this Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law, and seeks dismissal of the Complaint filed by Plaintiff, Victor Ariza ("Plaintiff"), on September 5, 2023 (Doc. 1) (the "Complaint"), and in support states the following:

### I.  <u>BACKGROUND</u>

Defendant owns, operates, and controls the website located at https://www.rumilifeshop.com (the "Website"), through which it sells to the public its merchandise. *See* Doc. 1 at ¶ 12.

1

In his Complaint, Plaintiff, who is visually disabled, has raised two claims against Defendant, both of which are premised on Plaintiff's alleged visual disability.

In Count I of the Complaint, Plaintiff alleges that Defendant's Website is not accessible to the visually disabled, in violation of Title III of the Americans with Disabilities Act (the "ADA") (hereinafter sometimes referred to as the "**Website ADA Claim**"). *See generally* Doc. 1 at ¶¶5-46, and 52-73. Plaintiff seeks declaratory and injunctive relief under the ADA to compel Defendant to make the Website accessible to the visually disabled. *See* Doc. 1 at ¶ 2.

In Count II of the Complaint, Plaintiff asserts a state law trespass claim for damages, which is premised upon his inability to comprehend a notice on the Website due to his blindness (hereinafter sometimes referred to as the "**State Law Trespass Claim**"). Doc. 1 at ¶ 50; *see generally* Doc. 1 at ¶¶ 47-51, and 74-82. Plaintiff alleges that the notice "informs the Website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising" Doc. 1 at ¶ 50. Plaintiff alleges that the Court has supplemental jurisdiction over the State Law Trespass Claim pursuant to 28 U.S.C. § 1367. *See* Doc. 1 at ¶ 2.

Defendant has filed this Motion to Dismiss Plaintiff's Complaint, including the Website ADA Claim and State Law Trespass Claim, on the grounds set forth herein.

## II.    MEMORANDUM

Plaintiff's Website ADA Claim in Count I should be dismissed pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, for lack of subject matter jurisdiction, because Plaintiff lacks standing to a bring a claim for injunctive relief under Title III of the ADA.

Plaintiff's State Law Trespass Claim in Count II should also be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because it involves a novel or complex issue of state law for which the Court should decline to exercise supplemental jurisdiction.

**A.    Count I of Plaintiff's Complaint Should Be Dismissed For Lack of Subject Matter Jurisdiction.**

**i.    _Legal Standard for Assessing Lack of Subject Matter Jurisdiction_**

A motion to dismiss for lack of subject matter jurisdiction, when made pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), can be either a facial or factual attack. *See Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003); *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007) ("[A] motion to dismiss for lack of subject matter

3

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint.").  If such a motion is made by *facial attack*, the Court must review the complaint to determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in the complaint are taken as true for the purpose of the motion to dismiss. *McElmurray,* 501 F.3d at 1251.

On the other hand, a motion made by *factual attack* "challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."). When making a factual attack, "[the movant] is challenging the accuracy of the allegations, not their sufficiency." *Norkunas v. Seahorse NB, LLC*, 720 F. Supp. 2d 1313, 1314 (M.D. Fla. 2010) (citations omitted).

In considering a factual attack, the Court considers "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits.'" *See, e.g., McMaster v. United States,* 177 F.3d 936, 940 (11th Cir.1999) (quoting *Lawrence*, 919 F.2d at 1529); *see also*

*Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1238–39 (11th Cir. 2002) (considering statements submitted by government employees in response to a plaintiff's FTCA claim). When a factual challenge to the existence of subject matter jurisdiction is made, the plaintiff must prove by a preponderance of the evidence that standing exists. *See Norkunas*, 720 F. Supp. 2d at 1314 (citations omitted). Unless the factual attack implicates an element of the cause of action, "the Court is free to make credibility determinations when reaching a decision" on the issue of whether standing exists. *Id.* at 1314 (*citing Lawrence*, 919 F.2d at 1529 ("[T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.")); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (noting that "in a factual challenge to subject matter jurisdiction, a district court can 'consider extrinsic evidence such as deposition testimony and affidavits,'" and "is 'free to weigh the facts' and is 'not constrained to view them in the light most favorable' to the plaintiff" (citing *Carmichael v. Kellogg, Brown & Root Serv.*, 572 F.3d 1271, 1279 (11th Cir. 2009))).

"[A] dismissal for lack of standing under Article III, § 2 of the United States Constitution ("Article III") has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case

no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006))

### ii.    *Plaintiff Lacks Article III Standing To Bring a Claim Under Title III of the ADA For Injunctive Relief Against Defendant*

In order to bring an action for injunctive relief under Title III of the ADA, Plaintiff must have standing under Article III. Absent a demonstration of standing, Plaintiff cannot satisfy the "case or controversy" requirement of Article III. *See Norkunas*, 720 F. Supp. 2d at 1315 ("A federal court…has an obligation to assure itself at the outset of litigation that a litigant who seeks an injunction has Article III standing.") (citations omitted).  To establish Article III standing, Plaintiff must demonstrate: "(1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable court ruling." *Id.* at 1315 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)).

In addition to establishing an injury in fact, a plaintiff seeking injunctive relief must also establish the existence of a "real and immediate threat of future injury by the defendant." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983)); *see Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001) ("[B]ecause injunctions

6

regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate - as opposed to a merely conjectural or hypothetical - threat of future injury."); *Cohan v. Bonita Resort & Club Ass'n*, 2015 U.S. Dist. LEXIS 58725, at *15 (M.D. Fla. 2015) (noting that the requirement to show a threat of future injury "is part of the injury-in-fact analysis, but only when injunctive relief is sought"); *Shotz v. Cates*, 256 F.3d 1077, 1081 (holding that plaintiffs lacked Article III standing by failing to allege a real and immediate threat of future discrimination where only past incidents of discrimination were alleged in the complaint); *Association for Disabled Americans v. City of Orlando*, 153 F. Supp. 2d 1310, 1322 (M.D. Fla. 2001). Plaintiff is seeking injunctive relief pursuant to his ADA Website Claim, and, therefore, must "show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future," to establish that he has suffered an injury in fact. *Cohan*, 2015 U.S. Dist. LEXIS 58725, at *8 (citations omitted).

Here, Plaintiff lacks standing to claim injunctive relief under the ADA because there is no real and immediate threat of future discrimination under Title III of the ADA, and there is no causal connection between Plaintiff's alleged injury and the alleged inaccessibility of Defendant's Website.

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S. C. § 12182(a). However, a website is not a place of public accommodation under the ADA. *See Kidwell v. Fla. Comm'n on Human Relations*, No. 2:16-cv-403-FtM-99CM, 2017 U.S. Dist. LEXIS 5828, at *13 (M.D. Fla. Jan. 17, 2017) (holding that a website is not a place of public accommodation and plaintiff may not claim a violation of Title III based on a website's accessibility).

Therefore, to establish an injury in fact or future threat of injury based on the accessibility of a website, Plaintiff must demonstrate that Defendant's Website "prevents his access to 'a specific, physical, concrete space'" that is owned, operated, or controlled by Defendant. *Id. (citing Access Now, Inc. v. Sw Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002)); *see also Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-cv-23801--LENARD, 2017 U.S. Dist. LEXIS 15457, at *13 (S.D. Fla. Feb. 2, 2017) (dismissing the plaintiff's ADA claim because the plaintiff failed to allege that defendant's website had impeded plaintiff's personal use of defendant's physical retail locations); *Access Now, Inc.*, 227 F. Supp. 2d at 1313 (dismissing ADA claim because plaintiffs were unable to demonstrate that defendant's website impedes their access to defendant's specific, physical, concrete space); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (finding Facebook website

is not place of public accommodation and does not have sufficient nexus to retail stores that sell Facebook gift cards to make Facebook liable under the ADA).

Here, Plaintiff alleges that "[a]s a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar stores, [he] has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's website and its physical stores." *See* Doc. 1 at ¶ 70. To show a causal connection between the inaccessibility of Defendant's Website and a future threat of injury preventing Plaintiff's access to a place of public accommodation under Title III of the ADA, Plaintiff further alleges the following:

> Because the Website allows the public the ability to secure information about the locations of Defendant's physical stores, purchase merchandise also available for purchase from  and in the physical stores, arrange home deliveries and in-store returns of merchandise purchased online, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in physical stores, the Website has a nexus to, and is an extension of, the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendant's physical stores in that, as a point of sale for the stores, it enables users of the Website to make online purchases of Defendant's merchandise that is also available from and in its physical stores, but not necessarily in the physical store Plaintiff intended to patronize.

Doc. 1 at ¶ 14.

Plaintiff alleges that, in the near future, he intends to patronize the retail store located at: Orlando International Premium Outlets at 4951 International Drive, Orlando, Florida (the "Orlando Retail Store"). *See* Doc. 1 at ¶ 7.

However, Plaintiff's allegations with respect to Plaintiff's standing to bring a claim for injunctive relief under Title III of the ADA are grossly inaccurate, as set forth in the Affidavit of Amy Lam on behalf of Defendant, a copy of which is attached hereto and incorporated herein as "Exhibit A."

Contrary to Plaintiff's allegations, Defendant ***does not*** own, operate, or control any physical retail store locations, including the Orlando Retail Store that Plaintiff allegedly intends to patronize in the near future. *See* Lam Aff.  ¶ 4; *contra* Doc. 1 at ¶ 7. Although Defendant has a license to use the brand name "Rumi Life" in connection with the Website, the inventory purchased and owned by Defendant is sold exclusively by Defendant through the Website and is ***not*** sold by Defendant in any physical retail stores, including the Orlando Retail Store. *See* Lam Aff. ¶¶ 5-6; *contra* Doc. 1 at ¶ 12 ("Defendant also sells to the public its merchandise through the Website, which acts as a critical point of sale for Defendant's merchandise that is also available from, in, and through Defendant's physical stores, but not necessarily the store that Defendant intended to patronize"). Moreover, Defendant has no ownership or control over the products sold at the Orlando Retail Store, and Defendant does not facilitate or allow any returns of products purchased

through the Website to be made in any physical retail store, including at the Orlando Retail Store. *See* Lam Aff. ¶¶ 7-8; *contra* Doc. 1 at ¶ 12 ("…the Website allows users to arrange home deliveries and in-store returns of merchandise purchased online.").

Additionally, Defendant's Website does not provide information about the Orlando Retail Store, or any other brick-and-mortar retail store, including information regarding the hours, location, or merchandise availability at the Orlando Retail Store. Doc. 1 at ¶ 10. Further, any exclusive online offers, benefits, invitations, and discounts provided by Defendant through the Website can only be used in connection with purchases made through Defendant's Website, and cannot be used for purchases made at any physical retail location. *See* Lam Aff. ¶ 9-10; *contra* Doc. 1 at ¶¶ 13-14.

Accordingly, Plaintiff lacks standing to bring a claim for injunctive relief under Title III of the ADA because he cannot establish the existence of a real and immediate threat of future discrimination due to the alleged inaccessibility of Defendant's Website. Plaintiff's inability to access Defendant's Website has not created an intangible barrier that excludes Plaintiff from accessing the goods, services, privileges, or advantages of the Orlando Retail Store, or any other physical place of public accommodation, and, therefore, must be dismissed as this Court lacks subject matter jurisdiction over Plaintiff's Website ADA Claim.

**B.     Count II of Plaintiff's Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

   **i.     *Legal Standard for Assessing Supplemental Jurisdiction***

Under 28 U.S.C.S. § 1367(c), the Court has discretion to forego supplemental jurisdiction in any of the following situations: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Any one of the foregoing reasons are sufficient to give the district court discretion to dismiss a case's supplemental state law claims.

   **ii.    *The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's Novel Or Complex State Law Trespass Claim***

The question of whether Defendant's collection of Plaintiff's browsing history without Plaintiff's express consent constitutes trespass under Florida law is a novel and complex issue of state law with potentially wide-reaching ramifications for internet service providers and website owners in Florida. *See, e.g., Fuller v. MP & LP Holdings, LLC*, No, 0:19-cv-60673-UU, 2019 U.S. Dist. LEXIS 44206 at *2 (S.D. Fla. Mar. 15, 2019). The undersigned has not located any Florida state court case that has addressed whether the use of cookies and collection of browsing history constitutes trespass under Florida Law. *See also id.* ("As far as

12

this Court is aware, no Florida case has addressed whether the use of cookies and collection of browsing history constitutes trespass under Florida Law.") Due to the complexity of Plaintiff's State Law Trespass Claim, "comity counsels that the Florida courts should resolve this issue." *Id.* (citing *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("[s]tate courts, not federal courts, should be the final arbiters of state law.") (citations omitted)).

Several ADA Plaintiffs have filed numerous cases in the Southern District of Florida asserting website accessibility violations pursuant to Title III of the ADA, and adding a trespass count substantially similar to Plaintiff's State Law Trespass Claim, and at least one court has declined to accept supplemental jurisdiction on the trespass issue, and has repeatedly dismissed the trespass count. *See, e.g., Fuller v. MP & LP Holdings, LLC*, No, 0:19-cv-60673-UU, 2019 U.S. Dist. LEXIS 44206 (S.D. Fla. Mar. 15, 2019); *Moncada v. VF Outdoor*, LLC, No. 0:19-cv-60333-UU, 2019 U.S. Dist. LEXIS 21839 (S.D. Fla. Feb. 08, 2019); *Hernandez v. Hallmark Retail, Inc.*, No. 1:18-cv-23793-UU, 2018 U.S. Dist. LEXIS 16018 (S.D. Fla. Sep. 17, 2018); *Espinoza v. Lululemon USA, Inc.*, No. 1:18-cv-21941-UU, 2018 U.S. Dist. LEXIS 84058 (S.D. Fla. May 16, 2018).

Accordingly, this Court should decline to exercise supplemental jurisdiction over Plaintiff's State Law Trespass Claim pursuant to 28 U.S.C. § 1367(c), and dismiss Count II of Plaintiff's Complaint. *See United Mine Workers v. Gibbs*, 383 U.S.

715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Needless decisions of state law should be avoided both as matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law.").

### III.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court, grant this Motion, dismiss Plaintiff's Complaint, and grant any further relief it deems just and proper.

### IV.   LOCAL RULE 3.01(G) CERTIFICATION

In short, based on the exchange of communications with opposing counsel, it is undersigned counsel's understanding that Plaintiff opposes the relief requested in this Motion.  At the time of filing this Motion, there was at least one outstanding component of the Motion that needed further conferral with opposing counsel.  Accordingly, undersigned counsel will continue conferral efforts with opposing counsel and will supplement this 3.01(g) Certification if an agreement with opposing counsel on the relief requested in this Motion can be reached.  Such an agreement remains doubtful at this time.

Defendant's conferral efforts are further described as follows.  On October 23, 2023, undersigned counsel emailed counsel for Plaintiff, advising that Defendant intended to file this Motion and setting forth the grounds to support this Motion. At the time of filing this Motion, undersigned counsel attempted to

contact Plaintiff's counsel by phone on two separate occasions, leaving a message each time to request the availability of Plaintiff's counsel for a call or email response to the undersigned's initial correspondence regarding Plaintiff's position on this Motion.

Plaintiff's counsel responded via email to the undersigned's initial email correspondence later on October 24, 2023, indicating that Defendant should proceed with filing this Motion and requesting additional information regarding the ownership of the brick-and-mortar stores; whether the owners of the brick-and-mortar stores were franchisees; and whether the brick-and-mortar locations are listed on the Website so as to create a nexus between the retail stores and the Website. The undersigned responded shortly thereafter, with the information requested.

Plaintiff's counsel replied via email correspondence, inquiring as to how the instant action is different from the facts in *Ariza v. The Coffee Beanery, Ltd.*, 643 F. Supp. 3d 1334 (S.D. Fla. 2022), in which the Court held that the defendant who owned and operated the allegedly inaccessible website could still be liable to Plaintiff despite the fact that this same defendant did not own or operate the physical store connected to the website. *Ariza*, 643 F. Supp. 3d at 1339. After review, the undersigned determined that the instant action is distinguishable from

15

*Ariza v. The Coffee Beanery.*  Undersigned counsel will supplement this certificate of conferral upon further (and continued) discussion with opposing counsel.

Respectfully submitted,

SPIRE LAW, PLLC
2572 W. State Road 426, Suite 2088
Oviedo, Florida 32765

By: */s/ Alyssa Castelli*
Alyssa Castelli, Esq.
Florida Bar No. 1032306
Jamie L. White, Esq.
Florida Bar No. 100018
alyssa@spirelawfirm.com
jamie@spirelawfirm.com
marcela@spirelawfirm.com
filings@spirelawfirm.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October 2023, the foregoing was electronically filed through the CM/ECF system, which will send a notice of electronic filing to Plaintiff's counsel, Roderick V. Hannah, Esq., Roderick V. Hannah, Esq., P.A. and Pelayo M. Duran, Esq., Law Office of Pelayo Duran, P.A. via email at: rhannah@rhannahlaw.com; rvhannah@gmail.com; pleadings@pelayoduran.com; duranandassociates@gmail.com; and mperezda@gmail.com.

*/s/ Alyssa Castelli*
Attorney

16

# EXHIBIT A

Affidavit of Amy Lam On Behalf of Defendant Rumi Online Inc.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VICTOR ARIZA,

       Plaintiff,

v.

RUMI ONLINE INC. d/b/a RUMI
LIFE, a foreign for profit corporation,

       Defendant.

_____/

Case No.: 6:23-cv-01701-RBD-RMN

### AFFIDAVIT OF AMY LAM
### ON BEHALF OF DEFENDANT RUMI ONLINE INC.

I, AMY LAM, a shareholder owning a 33% interest in Defendant, RUMI ONLINE INC.

d/b/a RUMI LIFE, a New York corporation ("Defendant"), hereby certifies the following under

penalty of perjury on behalf of Defendant:

1. I am over eighteen (18) years of age and otherwise competent to testify to the matters

   herein, and I am making the following statements from my personal knowledge of the facts.

2. I am a voting shareholder of Defendant, Rumi Online Inc., a New York corporation,

   owning a 33% shareholder interest in Defendant, and I am authorized to represent

   Defendant in this action.

3. Defendant owns, operates, and controls the website located at

   https://www.rumilifeshop.com (the "Website").

4. Defendant does not own, operate, or control any physical retail store locations, including

   the retail store located at Orlando International Premium Outlets, 4951 International Drive,

   Orlando, Florida (the "Orlando Retail Store").

1

5. Defendant has a license to use the brand name "Rumi Life" in connection with its website.

6. The inventory purchased and owned by Defendant is sold exclusively by Defendant through the Website and is not sold by Defendant in any physical retail stores, including the Orlando Retail Store.

7. Defendant has no ownership or control over the products sold at the Orlando Retail Store.

8. Defendant does not facilitate or allow any returns of products purchased through the Website to be made in any physical retail store, including the Orlando Retail Store.

9. Any exclusive online offers, benefits, invitations, and discounts provided by Defendant, through email or otherwise, can only be used in connection with purchases made through Defendant's Website, and cannot be used for purchases made at any physical retail location.

10. Defendant's Website does not provide information about the Orlando Retail Store, or any other brick-and-mortar retail store, including information regarding the hours, location, or merchandise availability at the Orlando Retail Store.

On behalf of Defendant, to the best of my knowledge and belief, I hereby declare that I have read the foregoing and confirm that the facts stated herein are true and accurate.

**DEFENDANT:**

RUMI ONLINE INC. d/b/a RUMI LIFE.
a New York corporation

BY: AMY LAM
Its: Shareholder
**Further affiant say naught**

STATE OF _New York_

COUNTY OF _Queens_

2

The forgoing instrument was acknowledged before me by means of ✓ physical presence,

____ online notarization, this _24_ day of ___Oct.___, 2023, by Amy Lam on behalf of Defendant,

Rumi Online Inc., a New York corporation.

_____
(Notary Signature)

(NOTARY SEAL)

HUAMING QIAN
NOTARY PUBLIC, STATE OF NEW YORK
01QI6363647
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES AUGUST 21, 20__

_____
(Notary Name Printed)
Commission No. _____
My Commission Expires _____

3