UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.  6:23-cv-1701-RBD-RMN

**VICTOR ARIZA**,

>        Plaintiff,

vs.

**RUMI ONLINE INC., d/b/a RUMI
LIFE, a foreign for-profit corporation;
RUMI LIFE, INC., d/b/a RUMI LIFE; a
foreign for-profit corporation; and OFF TO
SHOP, INC., d/b/a RUMI LIFE, a Florida
for-profit corporation,**

>        Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff VICTOR ARIZA, through undersigned counsel and for his

Amended Complaint, sues Defendants RUMI ONLINE INC. d/b/a RUMI LIFE, a

foreign for-profit corporation ("RUMI ONLINE"); RUMI LIFE, INC., d/b/a RUMI

LIFE, a foreign for-profit corporation ("RUMI LIFE"), and OFF TO SHOP, INC.,

d/b/a RUMI LIFE, a Florida for-profit corporation ("OTS"), and alleges as follows:

1.      This is an action for declaratory and injunctive relief, attorney's fees,

costs, and litigation expenses for unlawful disability discrimination in violation of

Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4.      Plaintiff VICTOR ARIZA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").  Although Plaintiff resides most of the time in Miami-Dade County, Florida, he regularly travels to and stays with friends in the Orlando, Florida area, specifically at 4143 Flying Fortress Avenue, Kissimmee, Florida, or stays in the Econolodge in Kissimmee, Florida.  His most recent trip to the Orlando area was in September 2023, and he intends to regularly visit the area, including making trips in November and/or December 2023.

5.      Plaintiff is and at all relevant times has been blind and visually disabled in that he suffers from optical nerve atrophy, a permanent eye disease and medical condition that substantially and significantly impairs his vision and limits his ability to see.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately

visualizing his world, and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h).  Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.     Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance.  Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.  The screen reading software uses auditory -- rather than visual -- cues to relay this same information.  When a sight impaired individual reaches a link that may be 'clicked

on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. 2017).

7.    Defendants RUMI ONLINE and RUMI LIFE are foreign for-profit corporations, based in New York, that, although not registered with the State of Florida to do business in the State, have at all relevant times been doing business in Florida through their associated website, https://www.rumilifeshop.com (the "Website"), and through their over 20 affiliated, authorized, associated, licensed, and/or franchised companies operating physical "Rumi Life" retail stores, including the retail store in Orlando, Florida owned and operated by Defendant OTS.   RUMI ONLINE and RUMI LIFE thus have done, and continue to do, substantial and not isolated business in the State of Florida through one or more franchised and/or licensed physical locations in Florida.   RUMI ONLINE and RUMI LIFE, through the Website and one or more of their affiliated, authorized, associated, licensed, and/or franchised retail stores, including the retail store owned and operated by OTS, also advertise and sell their merchandise to, and receive payments and revenues from, customers in the State of Florida, including Plaintiff.  RUMI ONLINE and RUMI LIFE thus: (a) purposefully target and solicit

business from Florida residents through the operation of the Website and through their affiliated, associated, licensed, and/or franchised Florida store owned and operated by OTS; (b) derive substantial revenues from repeat business transactions from residents in Florida; and (c) have more than a slight effect on the commerce of Florida as a result of their activity in the state.

8.     Defendant OTS is a Florida for-profit corporation that is authorized to do business, and that does business, in the State of Florida, specifically in Orlando, Florida.  OTS owns, operates, and/or controls a "Rumi Life" retail store in Orlando, Florida, which, until recently and at the time this lawsuit was first filed, was clearly being advertised on and being linked to the Website.  True and correct copies of screenshots of the Website as it existed both when Plaintiff first visited it in May 2023, and again as of August 9, 2023, shortly before this lawsuit was first filed, attached hereto as Composite Exhibit "A", demonstrate that the physical "Rumi Life" stores, including the physical store in Orlando, Florida, were being advertised on and linked to the Website.

9.     At all times relevant hereto, and upon information and belief, RUMI ONLIINE and RUMI LIFE, through their contracts, licensing, and/or franchise agreements with their authorized retail sellers, operated, conducted, and/or controlled sales of their merchandise through, and derived substantial revenues from, their authorized chain of physical stores, including the "Rumi Life"

authorized store owned and operated by OTS located at the Orlando International Premium Outlets at 4951 International Drive, Orlando, Florida, which Plaintiff intended to patronize in the near future, likely within the next several months.

10.     At all relevant times and up until this lawsuit was first filed, RUMI ONLINE linked to and advertised on the Website all of the "Rumi Life" authorized, affiliated, associated, licensed, and/or franchised retail stores, including the "Rumi Life" store located in Orlando, Florida owned and operated by OTS, such that the Website had, until the filing of this lawsuit, been held out as the official Website for Defendants' physicals stores, including the Orlando store owned by OTS. *See* Composite Exhibit "A".   Indeed, even though RUMI ONLINE, in response to the filing of the instant lawsuit and after the lawsuit was filed, deliberately removed its "store locator" feature from the Website, the Website still continues to advertise, be linked to, and feature Defendants' current and soon to be opened "Rumi Life" physical stores, and thus continues to be held out as the official Website for the physical stores, through its TikTok, Facebook, and Instagram links on the Website, as evidenced by the Website's current "Instagram" page, directly linked from the Website, a true and correct copy of which is attached

as Exhibit "B".[1]

11.    Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

12.    Plaintiff frequently accesses the internet.  Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

13.    At all times material hereto, Defendants were and still are organizations that jointly own, operate, and/or control, directly or through franchise and licensing agreements, retail stores selling home products, health and beauty products, stationary, electronics, toys, bags, and other items under the

---

[1] Defendant RUMI ONLINE appears to have taken this deliberate action of removing from the Website the pre-existing store locator feature in response to the filing of this lawsuit and to thereby support an affidavit, filed by Defendant with this Court in support of a motion to dismiss the original Complaint [ECF No. 18], with the misleading representation that the Website "does not provide information about the Orlando Retail Store, or any other brick-and-mortar retail store, including information regarding the hours, location, and merchandise availability at the Orlando Retail Store."  *See* Motion to Dismiss, Exhibit A (Affidavit of Amy Lam) at ¶ 10.  As of the date Plaintiff visited the Website in May 2023, and as of August 9, 2023, shortly before this lawsuit was filed, the Website had a prominently displayed store locator feature that featured the Orlando store in the Orlando International Premium Outlets, and that contained the locations and hours of operation of all of Defendants' physical "Rumi Life" stores. *See* Composite Exhibit "A".  In submitting the affidavit, Defendant apparently forgot about removing the Instagram link from the Website, which still exists, and which takes a user to Defendant's Instagram page that highlights and features Defendants' physical "Rumi Life" stores and further holds out the Website as the official website for the physical stores.  *See* Exhibit "B".

name "Rumi Life". Each "Rumi Life" store is open to the public. As the owners, operators and/or controllers of these retail stores, Defendants are defined as places of "public accommodation" within meaning of the ADA because Defendants are private entities which own and/or operate "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104.

14.     Because Defendants are stores open to the public, each of Defednants' physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36.

15.     Defendant RUMI ONLINE owns, controls, maintains, and operates the Website and its various functions and operations. One of the functions of the Website was and still is to provide the public information about, including the locations of, the "Rumi Life" authorized, licensed, franchised, and branded physical stores, including OTS' Orlando International Premium Outlets store, that sell Defendants' merchandise to the public. Defendants sell to the public Defendants' merchandise through the Website and through their associated network of authorized physical stores, including the OTS Orlando store. The Website thus acts as a critical point of sale for Defendants' merchandise that is also available for purchase from, in, and through Defendants' physical stores (but not

necessarily in the physical store Plaintiff intended to patronize).  Moreover, upon information and belief, OTS, through its contracts and agreements with RUMI LIFE and/or RUMI ONLINE, is directly linked to, and relies on, the Website as its exclusive online presence for the sale of Defendants' merchandise.

16.    The Website also services Defendants' physical stores by providing information on and links to new physical store openings, store locations, available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendants are interested in communicating to its customers.

17.    Because the Website allows the public the ability to secure information about the locations of and merchandise available in Defendants' physical stores, purchase merchandise that is also available for purchase from and in the physical stores, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts to purchase merchandise that is also available in the physical stores, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendants' physical stores, which are places of public accommodation under the ADA.  As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar locations and businesses.

Furthermore, the Website is a necessary service and privilege of Defendants' physical stores in that it enables users of the Website to make online purchases of Defendants' merchandise that is also available for purchase in and from its physical stores, but not necessarily in the physical store Plaintiff intended to patronize.

18.     Because the public can view and purchase Defendants' goods through the Website that are also offered for sale in Defendants' physical stores, thus having the Website act as a point of sale for Defendants' products that are also sold in the physical stores, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online, the Website is an extension of, and gateway to the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E).  As such, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores.

19.     At all times material hereto, Defendants were and still are organizations jointly owning, operating, controlling, being linked to, and deriving

substantial advertising and financial benefits from the Website.  Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical stores.  As such, Defendants have subjected themselves and the Website to the requirements of the ADA.

20.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendants' physical store in Orlando, Florida, and to check store hours and merchandise pricing, purchase merchandise, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use at the Website.   In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been updated to interact properly with screen reader software.

21.     The opportunity to shop and pre-shop Defendants' merchandise and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts to purchase Defendants' merchandise also available for purchase in the

physical stores from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendants have not provided their business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

22.    Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits and to compare merchandise, prices, services, sales, discounts, and promotions.  Plaintiff may look at several dozens of sites to compare features, services, discounts, promotions, and prices.

23.    Beginning in May 2023, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar stores, check store hours, and check merchandise pricing with the intent to make a purchase through the Website or in the Orlando physical store.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

24.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, the Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software.  These barriers are pervasive and include, but are not limited to:

a.  Unlabeled graphics;

b.  The shopping cart is mislabeled;

c.  Inside the shopping cart, the option to remove the item is stated before the actual item is read by the screen reader;

d.  Once an item is removed from the shopping cart, there is no confirmation that the action occurred;

e.  Some products have multiple images that are not labeled properly and do not describe the images; and

f.  When browsing products, the price is inaccessible.

25.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website.  However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

26.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a

sense of isolation and segregation, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

27.    Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize the "Rumi Life" Orlando physical store and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendants due to his blindness and the Website's access barriers.  Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through the Website due to his blindness and the Website's access barriers.  Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

28.    Because of the nexus between Defendants' retail stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendants' retail stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the

14

same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

29.     On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

31.     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33.     On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

34.     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

35.     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

36.     Defendants have not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

37.     Defendants have not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled and blind communities.

38.     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

39.     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendants' merchandise offered on the Website and also available in the physical stores from their homes.

40.     Defendants thus have not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and in the physical stores in contravention of the ADA.

41.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

42.     The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet shopping websites such as the Website at issue in the instant action.

43.     Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

44.     Defendants are, and at all relevant times have been, aware of the need to provide full access to all visitors to the Website.

45.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

46.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with the Website's access and operation.

47.     Notice to Defendants is not required because of Defendants' failure to cure the violations.

48.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

49.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

50.     Plaintiff re-alleges paragraphs 1 through 49 as if set forth fully herein.

51.     Pursuant to 42 U.S.C. §12181(7)(E), Defendants are a public accommodation under the ADA and thus are subject to the ADA.

52.     Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendants' physical stores, purchase merchandise that is also available for purchase from and in the physical stores, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts to purchase online

merchandise also available for purchase in the physical stores.  The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendants' physical stores.  Further, the Website serves to augment Defendants' physical stores by providing the public information about the stores and by educating the public as to Defendants' available merchandise sold through the Website and in the physical stores.

53.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

54.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

55.    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

56.    The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

57.    Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendants have made available to the public on the Website and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

59.    The Website was subsequently visited by Plaintiff's expert in August 2023 and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendants thus made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and

20

visually disabled persons such as Plaintiff.  Defendants furthermore have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor have they posted on the Website an effective "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website.  Defendants thus have failed to make reasonable modifications in their policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as alleged herein and as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "C" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

60.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

61.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

62.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

63.     Defendants have violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within the Website are ongoing.

64.     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

65.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

66.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

67.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

68.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

69.     As a direct and proximate result of Defendants' failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with the Website and the physical stores.

70.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

71.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website, a functional statement of the policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

b)  Require Defendants to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' physical stores and

becoming informed of and purchasing Defendants' merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and in the physical stores.

73.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A.  A declaration that the Website is in violation of the ADA;

B.  An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[2] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E.  An Order directing Defendants, by a date certain, to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to the Website;

F.  An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

---

[2]  or similar.

G. An Order requiring, by a date certain, that any third-party vendors who participate on the Website to be fully accessible to the visually disabled;

H. An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the

public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED:  November 13, 2023.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com

By: _s/ Roderick V. Hannah_
     RODERICK V. HANNAH
     Fla. Bar No. 435384

By: _s/ Pelayo M. Duran_
     PELAYO M. DURAN
     Fla. Bar No. 0146595

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of November, 2023, I electronically

filed the foregoing with the Clerk of Court using the CM/ECF system which will

send notification of such filing to:

Alyssa Castelli, Esq.
Jamie L. White, Esq.
SPIRE LAW, PLLC
2572 W. State Road 426, Suite 2088
Oviedo, Florida 32765
alyssa@spirelawfirm.com
jamie@spirelawfirm.com
marcela@spirelawfirm.com
filings@spirelawfirm.com

*Attorneys for Defendant*
*RUMI ONLINE, INC., d/b/a RUMI LIFE*

           /s/  Roderick V. Hannah
                    Roderick V. Hannah